IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **13-11623-BB**

United States of America,

Appellee,

- versus -

Jorge Cartaya-Acosta,

Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
_____

<u>BRIEF FOR THE UNITED STATES</u>

Wifredo A. Ferrer
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida  33132-2111
(305) 961-9295

Kathleen M. Salyer
Chief, Appellate Division

Lisa Tobin Rubio
Assistant United States Attorney

Emily M. Smachetti
Assistant United States Attorney

Of Counsel

**United States v. Jorge Cartaya-Acosta, Case No. 13-11623-BB**

**Certificate of Interested Persons**

Undersigned counsel for the United States of America hereby certifies that the following is a complete list of persons and entities who have an interest in the outcome of this case who were not included in the Certificate of Interested Persons set forth in appellant's brief:

Rubio, Lisa Tobin

Salyer, Kathleen M.

Smachetti, Emily M.

s/Emily M. Smachetti
Emily M. Smachetti
Assistant United States Attorney

**Statement Regarding Oral Argument**

The United States of America respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# Table of Contents

**Page:**

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . c -1 of 1

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

Statement of the Issue  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of the Case:

      1.  Course of Proceedings and Disposition in the Court Below. . . . . . . . .  1

      2.  Statements of the Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

           a.  The Evidentiary Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

           b.  The Report and Recommendation & Final Revocation

               Hearing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

      3.  Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

# Table of Contents

## (continued)

**Page:**

Argument and Citations of Authority:

The Evidence Was Sufficient To Support The Determination That

Cartaya-Acosta Violated His Supervised Release By Committing

Petty Theft  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

iii

## Table of Citations

**Cases:**                                                                                    **Page:**

Livar v. State,

  873 So. 2d 544 (2d DCA 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

R.R.W. v. State,

  915 So. 2d 633 (Fla. 2d DCA 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

State v. Sykes,

  434 So. 2d 325 (Fla.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

United States v. Brown,

  415 F.3d 1257 (11th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

United States v. Cartaya-Acosta,

179 Fed.Appx. 619 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

United States v. Cataldo,

171 F.3d 1316 (11th Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

United States v. Chirinos,

112 F.3d 1089 (11th Cir. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

United States v. Copeland,

20 F.3d 412 (11th Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

United States v. Gonzalez,

719 F.2d 1516 (11th Cir. 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

iv

**Table of Citations**

**(continued)**

**Cases:**                                                                                      **Page:**

United States v. Henderson,

693 F.2d 1028 (11th Cir. 1982)..................................... 15

United States v. Trainor,

376 F.3d 1325 (11th Cir. 2004)..................................... 12

United States v. Velasquez Velasquez,

524 F.3d 1248 (11th Cir. 2008)..................................... 10


**Statutes & Other Authorities:**                                              **Page:**

18 U.S.C. § 111................................................ 1

28 U.S.C. § 1291............................................... vi

18 U.S.C. § 3231............................................... vi

18 U.S.C. § 3583............................................ vi, 12

Fed. R. App. P. 32(a)(5). ........................................ 18


**United States Sentencing Guidelines:**

§ 7B1.3...................................................... 12

v

## Statement of Jurisdiction

The district court had original jurisdiction over this case pursuant to 18 U.S.C. § 3231 because Cartaya-Acosta was charged with offenses against the laws of the United States. The district court also had jurisdiction over Cartaya-Acosta's term of supervised release pursuant to 18 U.S.C. §§ 3583, 3601, and 3624.

This Court's jurisdiction is invoked under 28 U.S.C. § 1291, which gives this Court jurisdiction of appeals from all final decisions of the district courts.

The judgment against Cartaya-Acosta, revoking his term of supervised release, was entered on the district court's docket on April 9, 2013 (DE 107). Cartaya-Acosta filed his notice of appeal on April 11, 2013 (DE 108).

The appeal in this case is from a judgment that disposes of all the parties' claims in the criminal case.

## Statement of the Issue

Whether the evidence was sufficient to support the district court's determination that Cartaya-Acosta violated his supervised release by committing petty theft.

## Statement of the Case

### 1.    Course of Proceedings and Disposition in the Court Below

On February 18, 2005, a federal grand jury in the Southern District of Florida returned an indictment charging Jorge Cartaya-Acosta with forcibly assaulting with a deadly and dangerous weapon federal officers engaged in the official performance of their duties, in violation of 18 U.S.C. §§ 111(a), 111(b), and 2 (DE 12).  Cartaya-Acosta was convicted following a jury trial (DE 60:28-29), and sentenced to 72 months' imprisonment and two years' supervised release (DE 52, 54).  In connection with Cartaya-Acosta's term of supervised release, the court ordered him to abide by a number of conditions, including prohibitions against committing another federal, state, or local crime and leaving the judicial district without permission (DE 119:10-12).

Cartaya-Acosta appealed his conviction and sentence (DE 55), and this Court affirmed in United States v. Cartaya-Acosta, 179 Fed.Appx. 619 (11th Cir. 2006).

On July 16, 2010, Cartaya-Acosta was released from the custody of the Bureau of Prisons and commenced his term of supervised release.  He was arrested on June

28, 2012, for violating the conditions of his supervised release (DE 78-79). The Probation Office alleged that he had violated the terms of his supervised release both by committing various crimes and by leaving the judicial district without permission. Specifically, Probation alleged that Cartaya-Acosta had violated his conditions of supervision by: committing the offense of burglary of an unoccupied conveyance in violation of Florida law (Violation 1); committing the offense of third degree grand theft in violation of Florida law (Violation 2); committing the offense of criminal mischief in violation of Florida law (Violation 3); and leaving the judicial district without securing the permission of the probation officer (Violation 4) (id. 80).

On November 13, 2012, a magistrate judge conducted a lengthy evidentiary hearing concerning Cartaya-Acosta's violations of supervised release (DE119). At the start of the hearing, the government amended the petition, without objection. As a result of these amendments, the hearing concerned whether Cartaya-Acosta had committed the following violations: attempted grand theft in the third degree for the attempted grand theft of diesel fuel in violation of Florida law (Violation 1); criminal mischief for less than $200 in violation of Florida law (Violation 2); petty theft in violation of Florida law (Violation 3); loitering and prowling for trespass on private property in violation of Florida law (Violation 4); and leaving the judicial district (Violation 5) (DE 101:3; DE 119:2-4).

2

After considering the evidence presented at the hearing, which is set forth in more detail below, the magistrate judge issued a report and recommendation suggesting that Cartaya-Acosta's term of supervised release be revoked based on his finding that he violated the terms of his supervised release by committing Violations 2-5; the government had failed to prove that Cartaya-Acosta committed Violation 1 (grand theft) (DE 101).   Cartaya-Acosta filed objections to the report and recommendation (DE 102), and the government responded (DE 105).

On April 8, 2013, the district court conducted a final revocation hearing, adopted the magistrate judge's report and recommendation, and sentenced Cartaya-Acosta (within the agree-upon advisory guideline range) to a term of 9 months of imprisonment (DE 115:2-6).  When offered the opportunity to do so, Cartaya-Acosta raised no objections to the sentence or the manner in which it was imposed (id.).

## 2.   Statement of the Facts

### a.   The Evidentiary Hearing[1]

The facts underlying Cartaya-Acosta's supervised release violations occurred on the night of May 28, 2012, when Cartaya-Acosta was arrested in Glades County,

---

[1]   The government presented its case through the testimony of four witnesses: United States Probation Officer Andrew Carmona, Hendry County Deputy Sheriffs Blake Branaman and Micah Thomas, and Glades County Deputy Sheriff Richard Jones.

3

Florida, for trespass in violation of his conditions of supervision (DE 119:6, 13-15, 22-23; GX:34). Cartaya-Acosta subsequently reported his arrest in Glades County, where he had traveled without permission in violation of his conditions of supervised release (id.).

Deputy Blake Branaman worked at the Hendry County Sheriff's Office but also was privately contracted to work with U.S. Sugar and Sugarland Harvesting, Inc. (collectively "Sugar") (id. at 24-26). Sugar owns large, isolated tracts of land in Palm Beach County and Hendry and Glades Counties, both of which are outside the Southern District of Florida (id. at 12-13, 29). Deputy Branaman was hired to handle matters occurring on Sugar's property and to monitor Sugar's properties for illegal activities (id. at 24-26).

On the night of May 28, 2012, while patrolling an area in Glades County, Deputy Branaman saw a white truck approaching him on Sugar property near the Benbow One fuel tank (id. at 26-32; GX:1-4). Specifically Deputy Branaman saw two unfamiliar men, later identified as Cartaya-Acosta and his brother, leaving with what looked like large gallon drums covered by a tarp in the back of the truck (id.). Deputy Branaman decided to follow the vehicle, but as he turned his patrol car around, Deputy Branaman saw the truck flee at a high rate of speed (id. at 32-35). Deputy Branaman pursued the vehicle and called for backup (id.).

4

After a short chase, Deputy Micah Thomas apprehended the white truck and stopped it in a neighborhood in Moore Haven, Florida (id. at 34-36, 61-64). Jorge Cartaya-Acosta was driving the truck and his brother Jose was riding in the passenger seat. Deputy Thomas patted down Jose and recovered a screwdriver in his pocket; he also detected the smell of diesel fuel (id. at 64-66; GX 9).

Within moments, Deputy Branaman, who had lost sight of the vehicle, arrived at the truck, which had been secured by Deputy Thomas (id. at 34-35, 59-60). Deputy Branaman noticed that the large gallon drums he had seen in the back of the truck appeared to be missing, but the tarp that had been covering those items was still in the back of the truck (id. at 34). Upon inspection of the vehicle, Deputy Branaman noticed a strong odor of diesel fuel emanating from both the truck and Cartaya-Acosta (id. at 35). Deputy Branaman also saw dirty and obviously used trailer-truck tail lights in the back seat of truck, an observation that was verified by other officers (id. at 35-38, 109-10; GX 11-12; GX 36). Later, Deputy Branaman located a trailer-truck with missing tail lights (which could have been removed with a screwdriver) located near the Benbow One fuel tank where Deputy Branaman had first encountered Cartaya-Acosta's truck on Sugar property (id. at 37-38, 43-45, 57-58, 125-26; GX 29-32). Thereafter, Deputy Branaman verified that the lights found in Cartaya-Acosta's

5

truck were the same type of lights that the other trailer-truck was missing (id. at 37-38).

While completing their investigation in the area near where Cartaya-Acosta's truck was stopped, Deputy Branaman and other officers found 55-gallon and 30-gallon diesel drums along with an electric fuel pump and hose attached (id. at 38-39). These items were found approximately a block-and-a-half away from where the police stopped and searched Cartaya-Acosta (id.). The abandoned fuel drums contained approximately one gallon or less of fuel (id.).

Subsequent investigation of the truck by Sargent Jones revealed what appeared to be diesel fuel on rubber floor mats inside Cartaya-Acosta's truck (id. at 69-71, 85-86). Sargent Jones concluded that it was fresh because it had not dried and was still in liquid form (id.). A search of the truck also revealed rope, jumper cables capable of powering an electrical pump, electrical wiring, and a tool bag containing a cordless drill, drill head, and a diamond style cutting blade (id. at 86-88).[2]

---

[2]    Follow up investigation near the Benbow One fuel tank revealed that a lock had been cut off the fuel tank and the cap to the tank was open (id. at 39-41, 101-03; GX 28). Footprints consistent with the shoes that Cartaya-Acosta was wearing were found in the vicinity of the tank (id. at 99-101, 104-06; GX 25-27).

Based on this evidence and statements made by eyewitnesses, Sargent Jones decided to arrest Cartaya-Acosta and his brother for trespassing on private property (id. at 88-99; GX 5-8, 10-21).

During the hearing, no witness could say how much fuel was in the tank on the night of May 28, 2012. And, although the electric pump, hose and other material found near Cartaya-Acosta's truck could have been used to pump out fuel from the fuel tank, there was no witness who saw anyone physically take fuel from the tank (id. at 127-28). Nor did he find bolt cutting equipment or any puddles of fuel on the ground near the fuel tank (id. at 119). With respect to the tail lights found in Cartaya-Acosta's truck, they had not been tested to see if they actually worked.

In his defense, Cartaya-Acosta called a witness who stated that Cartaya-Acosta had produced evidence that he had recently purchased the trailer-truck tail lights (id. at 134-37)

### b.    The Report and Recommendation & Final Revocation Hearing

The magistrate judge entered a report and recommendation suggesting that Cartaya-Acosta's supervised release be revoked because the government had met its burden of proving that Cartaya-Acosta had violated his conditions of supervision by committing three crimes in violation of Florida law: (1) criminal mischief (Violation 2); (2) petty theft (Violation 3); and (3) loitering and prowling (Violation 4); in

7

addition, Cartaya-Acosta had left the judicial district without permission (Violation 5).[3]

Of relevance here, the magistrate judge found that the government had met its burden of proving, by a preponderance of the evidence, that Cartaya-Acosta attempted to commit a petty theft[4] on May 28, 2012 (DE 101:10). Against this backdrop, the magistrate judge found that the evidence was sufficient to show that Cartaya-Acosta and his brother "were indeed seeking out sources of fuel to steal in some amount" (id. at 10). In support of his finding, the magistrate judge noted that the evidence was "plentiful" (id.). Specifically, Cartaya-Acosta and his brother were spotted at the tanker, on private property, with no other ostensible reason to be there, a hundred or more miles away from Cartaya-Acosta's residence, driving a truck with drums capable of storing stolen fuel hidden under a tarp (id.). In addition, there was evidence that Cartaya-Acosta and his brother took tail lights from a trailer-truck. Citing Deputy Branaman's credible testimony, the magistrate judge noted that there

---

[3]    The magistrate judge recommended that Violation 1 (grand theft of diesel fuel) be dismissed because there was no evidence that Cartaya-Acosta attempted to steal fuel valued at over $300, which was required to sustain a grand theft conviction under Florida law (DE 101:8-10).

[4]    Under Fla. Stat. § 812.014(3)(a), "theft of any property not specified in subsection (2) is petit theft of the second degree and a misdemeanor of the second degree."

8

was ample evidence that tail lights, of the same type missing from a trailer-truck in the vicinity of the crime, were found inside Cartaya-Acosta's truck (id. at 11).[5]

Cartaya-Acosta filed objections to the report and recommendation, urging the district court to find that the government had failed to prove that he had committed petty theft (Violation 3) and loitering and prowling (Violation 2) (DE 102). In addition, Cartaya-Acosta urged the district court to find that his admitted travel outside the district did not amount to a violation of his conditions of supervision (id.). The government responded that Cartaya-Acosta's supervised release should be revoked based on the findings in the report and recommendation (DE 105).

On April 8, 2013, the district court conducted a final revocation hearing (DE 115). After confirming that Cartaya-Acosta had nothing to add to his objections, the district court revoked his supervised release and adopted the magistrate judge's report and recommendation finding Cartaya-Acosta guilty of petty theft, criminal mischief, loitering and prowling, and being absent from the district without permission (DE 115:2). As Cartaya-Acosta had been found guilty of three Grade C violations, the

---

[5]    The magistrate judge also found sufficient evidence that Cartaya-Acosta had also committed both criminal mischief and loitering and prowling (DE 101:10-13) and that he had traveled outside the judicial district without permission (id. at 14). Cartaya-Acosta does not challenge those determinations on appeal.

parties agreed that, with a criminal history category I, the advisory guideline range was three to nine months of imprisonment (id. at 3).

Cartaya-Acosta requested a sentence at the low-end of the advisory guideline range, pointing out that the offenses charged in this case had occurred shortly before his term of supervised release was set to expire (id. at 3-4). Moreover, Cartaya-Acosta had been complying with the terms of supervision and providing for his family (id.). The government responded that a nine-month sentence was appropriate as Cartaya-Acosta had not admitted his conduct to the probation office and, in fact, had made false exculpatory statements regarding the incidents underlying the revocation (id. at 4-5). Thereafter, the district judge sentenced Cartaya-Acosta to a term of nine months of imprisonment (id. at 6). When offered the opportunity to do so, Cartaya-Acosta raised no new objections to the sentence or the manner in which it was imposed (id.).

## 3.    **Standard of Review**

This Court reviews the district court's revocation of supervised release for an abuse of discretion. United States v. Velasquez Velasquez, 524 F.3d 1248, 1252 (11th Cir. 2008).

10

## Summary of the Argument

The district court properly determined that Cartaya-Acosta violated his supervised release by committing a petty theft, among other crimes. Contrary to Cartaya-Acosta's arguments, the evidence was more than sufficient to show that Cartaya-Acosta and his brother stole, or attempted to steal, diesel fuel and trailer-truck tail lights. In any event, Cartaya-Acosta's challenge is moot because the violations for loitering and prowling and criminal mischief, which he does not challenge, were sufficient by themselves to support the revocation of supervised release and the sentence imposed.

## Argument

### The Evidence Was Sufficient To Support The Determination That Cartaya-Acosta Violated His Supervised Release By Committing Petty Theft.

In a bare-bones argument on appeal, Cartaya-Acosta argues only that the district court erred by finding that the evidence was sufficient to support the conclusion that he had violated his terms of supervised release by committing petty theft (Br. at 13-15). Significantly, Cartaya-Acosta does not challenge the court's ultimate decision to revoke his supervised release, nor does he challenge any aspect of his sentence (See Br. 14 n.1 "Mr. Cartaya-Acosta is not challenging the court's determination regarding the remaining violations). The problem with his sufficiency

11

challenge to the petty theft violation is that it is moot because the violations of loitering and prowling and criminal mischief, which he does not challenge, were sufficient by themselves to support the revocation of supervised release and ultimate sentence.  In any event, Cartaya-Acosta's argument is utterly meritless because the evidence was more than sufficient to support the petty theft violation.

A district court may revoke a defendant's term of supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of that release.  18 U.S.C. § 3583(e)(3); USSG § 7B1.3(a)(2) (providing that district court may revoke supervised release if court finds defendant committed a Grade C violation); see also United States v. Trainor, 376 F.3d 1325, 1331 (11th Cir. 2004). The preponderance-of-the-evidence standard is met if it is "more likely than not" that the defendant violated a condition of his supervised release.  See United States v. Cataldo, 171 F.3d 1316, 1322 (11th Cir. 1999).

As set forth above, Cartaya-Acosta's conditions of supervised release included a prohibition against committing another federal, state, or local crime.  Here, Cartaya-Acosta committed three Grade C violations, only one of which is in dispute (DE 115:3).  Consequently, the district court was entitled to revoke Cartaya-Acosta's term of supervised release based on his commission of petty theft, in violation of Fla. Stat.

12

§ 812.014(3)(a),  in addition to the other bases for revocation -- his commission of loitering and prowling and criminal mischief.

Florida Statute 812.014(3)(a), provides that: "Theft of any property not specified in subsection (2)[6] is petit theft of the second degree...." Livar v. State, 873 So.2d 544 (2[d] DCA 2004).  Under Florida law, the crime of theft is fully proved by showing that the defendant endeavored to steal; there is no separate crime of attempted theft.  See State v. Sykes, 434 So.2d 325, 327 (Fla.1983).  In this case, as magistrate judge properly concluded, the government had met its burden of proving that Cartaya-Acosta "was in fact guilty of second degree petit theft" (DE 101:10).

As set forth above, the evidence established that Cartaya-Acosta and his brother stole, or set out to steal, diesel fuel and trailer-truck tail lights.  As for the diesel fuel, the evidence established that, on the night of May 28, 2012, Cartaya-Acosta and his brother were seen at the diesel fuel tanker in a remote area 100 or more miles away from home, driving a truck with drums that could be used to hold diesel fuel hidden under a tarp.  When spotted, Cartaya-Acosta attempted to flee the area, and, when his truck was finally stopped, the truck and its occupants reeked of diesel fuel.  Moreover, Cartaya-Acosta and his brother were in possession of a

---

[6]    That section addresses first-degree petit theft, which requires proof that the property stolen is "valued at $100 or more, but less than $300." § 812.014(2)(e), Fla. Stat. (2010).

screwdriver and other items consistent with an attempt to steal diesel fuel. In addition, in the area near where the truck was stopped, law enforcement officers found 55-gallon and 30-gallon diesel drums containing small amounts of diesel fuel along with an electric fuel pump and hose attached (id. at 38-39). Under these circumstances, the evidence was sufficient to establish that it was "more likely than not" that Cartaya-Acosta attempted to steal diesel fuel.

In addition, the evidence was sufficient to establish that it was "more likely than not" that Cartaya-Acosta had also stolen tail lights from a trailer-truck near the fuel tank and placed them in his truck. The obviously used and soiled tail lights were found in the back of Cartaya-Acosta's truck, and Deputy Branaman testified that the lights were the same type missing from a trailer-truck near the location where Cartaya-Acosta was seen. Under these circumstances, the magistrate judge also correctly concluded that it was more likely than not that theft of the lights also constituted a petty theft (DE 101:11).

Cartaya-Acosta argues that the evidence was insufficient because "the government presented no evidence that Mr. Cartaya-Acosta took anything." That is simply untrue. As noted above, the government presented an array of circumstantial evidence to prove that it was more likely than not that Cartaya-Acosta committed petty theft. This Court does not distinguish between the weight given direct and

14

circumstantial evidence. <u>United States v. Gonzalez</u>, 719 F.2d 1516, 1521 (11th Cir. 1983). In fact, "it is a common tenet of modern American jurisprudence that indirect evidence (often called "circumstantial" evidence) is not intrinsically less valuable or less reliable than direct evidence. <u>See generally</u> <u>United States v. Henderson</u>, 693 F.2d 1028, 1030 (11th Cir. 1982) ("Circumstantial evidence can be and frequently is more than sufficient to establish guilt beyond a reasonable doubt. The test for evaluating circumstantial evidence is the same as in evaluating direct evidence").

Moreover, the magistrate judge was entitled to credit the officer's testimony regarding the events of May 28, 2012. The credibility of a witness is in the province of the factfinder, and this Court will not ordinarily review the factfinder's determination of credibility. <u>United States v. Brown</u>, 415 F.3d 1257, 1267 (11th Cir. 2005); <u>United States v. Copeland</u>, 20 F.3d 412, 413 (11th Cir. 1994). Indeed, this Court will accept the factfinder's credibility determination unless this Court is "left with the definite and firm conviction that a mistake has been committed." <u>United States v. Chirinos</u>, 112 F.3d 1089, 1102 (11th Cir. 1997). Here, the magistrate judge specifically credited Deputy Branaman's version of the facts, which was sufficient

to support a conclusion that Cartaya-Acosta had violated his terms of supervision by committing petty theft.[7]

In sum, the district court did not err in revoking Cartaya-Acosta's term of supervised release and sentencing him to a term of nine months of imprisonment.

---

[7]    As discussed above, Cartaya-Acosta does not challenge the magistrate judge's determination that he had also violated his conditions of supervision by committing criminal mischief and loitering and prowling. Nor could he. Under Florida law, a person commits criminal mischief under section 806.13(1)(a), in relevant part, if he "willfully and maliciously injures or damages by any means any real or personal property belonging to another, including, but not limited to, the placement of graffiti thereon or other acts of vandalism thereto." See R.R.W. v. State, 915 So.2d 633, 635 (Fla. 2d DCA 2005). Under the loitering and prowling statute, it is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." See Fla. Stat. Ann. § 856.021(1).

Here the evidence adduced at the evidentiary hearing clearly established by a preponderance of the evidence that Cartaya-Acosta committed loitering and prowling and criminal mischief. Thus, his supervised release was properly revoked on those bases as well.

We also note that Cartaya-Acosta did not challenge the magistrate judge's termination that he had violated the condition of supervision that required him to seek permission before traveling outside the jurisdiction of supervision.

16

**Conclusion**

For the foregoing reasons, the district court's decision should be affirmed.

Respectfully submitted,

Wifredo A. Ferrer
United States Attorney


By:    *s/Emily M. Smachetti*
Emily M. Smachetti
Assistant United States Attorney
U.S. Attorney's Office
99 NE 4th Street, No. 512
Miami, Florida 33132
emily.smachetti@usdoj.gov



Kathleen M. Salyer
Chief, Appellate Division

Lisa Tobin Rubio
Assistant United States Attorney

Of Counsel

17

**Certificate of Compliance**

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Corel Word Perfect X5, 14-point Times New Roman.

**Certificate of Service**

I hereby certify that seven copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 22nd day of August 2013.  I further certify that, on the same day, I electronically filed and served the foregoing brief with the Clerk of the Court for the Eleventh Circuit Court of Appeals, using CM/ECF.

*s/Emily M. Smachetti*
Emily M. Smachetti
Assistant United States Attorney

19